UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ANKE CARLSON, | ) ) ) ) ) ) ) ) ) ) ) | |
| Petitioner, | | |
| v. | | No. 1:22-cv-00345-MSM-PAS |
| KURT CARLSON, | | |
| Respondent. | | |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

E.C. is a thirteen-year-old boy, embroiled in a custody dispute between his German mother and American father. The custody battle is not before this Court and will be resolved at some future date, either in a German or American court with jurisdiction over domestic matters. This Court's involvement is strictly limited to the question of where E.C. will reside pending the resolution of that dispute. The Court's jurisdiction lies pursuant to the International Child Abduction Act, 22 U.S.C. § 9001 *et seq*[1] which codifies the set of principles and international agreements adopted by the Hague Convention. Hague Convention on the Civil

---

[1] Jurisdiction is specifically given to the court "in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(a), (b).

1

Aspects of International Child Abduction, T.I.A.S. No. 11,670, 19 L.L.M.1 1501 (1980), cited in *Whallon v. Lynn,* 230 F.3d 450, 452 (1st Cir. 2006).

Both E.C.'s parents love him very much and, it is clear to the Court, want what is best for him. They disagree on what that is.

The Hague Convention, to which the United States is a signatory, sets forth procedures to employ if a child under the age of sixteen[2] is abducted to, or wrongfully retained in, a country other than that where the other parent lives if the non-abducting parent has custodial rights. It "seeks 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'" *Id.* at 454. In this case, E.C. declined to return to Germany after a planned visit with his father in Burrillville, Rhode Island. Kurt[3] then kept him in the United States and Anke petitioned for an order from this Court directing his return to Germany pending resolution of the custody dispute. This Court's authority is merely to determine his interim location. *Vieira v. De Souza,* 22 F.4th 304, 312 (1st Cir. 2022).

This Court expedited proceedings and held three hearings (October 4, 2022, October 11, 2022, and December 14-15, 2022); the last was a two-day evidentiary hearing. It appointed a Guardian ad Litem ("GAL") for E.C. and, on December 1,

---

[2] Article 4 of the Convention provides that it "shall cease to apply when the child attains the age of 16 years."

[3] In order to avoid referring to the parties by the dehumanizing titles "petitioner" and "respondent," the Court refers to them in this opinion as Kurt and Anke, intending no disrespect by the informality.

2022, the Court interviewed E.C. *in camera* in the presence of the GAL. The parties submitted memoranda early in the case and again after the evidentiary hearing. After a review of this material, the Court finds facts as delineated below, reaches certain legal conclusions based on those facts, and DENIES the Petition for Return of E.C. to Germany.

## I. FACTUAL BACKGROUND

E.C.'s parents were married in the United States in 2007 and E.C. was born two years later. When E.C. was just shy of eight years old, they divorced in Rhode Island, agreeing to joint legal custody and physical placement in Germany with his mother. The Final Judgment specified both E.C. and Anke would live in Germany, and they moved there in March 2015.

Since that time, and pursuant to agreement, E.C. has visited Kurt frequently during the summer and school vacations. Kurt has generally accompanied him to and from Germany for these visits. E.C. visited his father extensively in the United States, sometimes accompanied by his mother, and Kurt has visited E.C. in Germany. At one point in 2021, E.C. expressed a desire to live with his father. The parties agreed that he would move to the United States in the summer of 2022 to live with Kurt. In March 2022, Anke testified, E.C. had a change of heart and decided to spend the summer of 2022 with Kurt in Burrillville, but not move there permanently until 2023. E.C. did then journey to the U.S. for the summer of 2022. On August 11, 2022, the day of his scheduled return to Germany, E.C. declined to go home and, according to his father, broke down in the airport, refusing to board

3

the plane. That day, when she discovered E.C. was not on the plane, Anke filed this petition pursuant to the Hague Convention, demanding his return. She also petitioned for physical placement of her son in Germany and filed a Motion to Modify the Final Judgment in the divorce proceedings. Those latter matters are pending disposition in the Rhode Island Family Court.

## II. LEGAL ISSUES

### A. Preliminary Findings

Most of the relevant factual issues are undisputed. At the close of the evidentiary hearing on December 14, 2022, the Court found that the provisions of the Hague Convention apply here. E.C. is a child under the age of sixteen. (ECF No. 28, Joint Stipulation, at ¶ 6.) Both his parents enjoy custodial rights by virtue of the Final Decree, *Kufner v. Kufner,* 519 F.3d 33, 39 (1st Cir. 2008), *aff'g* 480 F. Supp. 2d 491 (D.R.I. 2007), and they agree Anke was exercising her custody rights at the time E.C. failed to return. *Id.* ¶¶ 8, 22. They also agree the country of his habitual residence is Germany. *Id.* ¶ 9. *See Karim v. Nakato,* No. 21-11458-WGY, 2022 WL 1597955, at *10 (D. Mass. May 20, 2022) (finding United Kingdom to be place of habitual residence). Finally, the parties agree that since August 11, 2022, E.C. has been wrongfully retained in the United States. *Id.* ¶¶ 23, 24. Beyond their agreements, the evidence supports those findings.

The purpose of the Hague Convention is to restore the pre-removal status quo and discourage parents from attempting to deprive the country of habitual residence from deciding custody. *Whallon,* 230 F.2d at 455. For that reason, there

is a "strong presumption" that a child wrongfully retained must be ordered returned to the country of his habitual residence. *Rodriguez v. Yanez,* 817 F.3d 466, 477 (5th Cir. 2016). Article 13 of the Convention establishes several "narrow exceptions"[4] that can overcome the presumption of return and justify a Court's decision to retain the child in the jurisdiction where he presently resides. The one relevant here is the mature child exception.[5] The parent opposing return must prove the applicability of an exception by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(A).

### B. Mature Child Exception

The "mature child exception" empowers a judicial authority to "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, Article 13.

> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests.

---

[4] This is the language of 22 U.S.C. § 9001((a)(4).

[5] Another exception lies if the person promoting return was not actually exercising custody rights at the time of retention, or had consented or acquiesced in the child's being retained. The final exception is appropriate if there is a "grave risk of harm" presented by return. Neither is relevant here.

5

*Rodriguez v. Yanez,* 817 F.3d 466, 475 (5th Cir. 2016), quoting Elisa Pérez–Vera, *Explanatory Report: Hague Convention on Private International Law* ¶ 30, available at https://assets.hcch.net/upload/expl28.pdf.  There are two parts to this standard:  that the child is of sufficient maturity to express an opinion *and* that the child objects to return.  The parties disagree as to each.

### 1. Age and Maturity

Neither the Convention nor its codification establish a minimum age at which a child may be found sufficiently mature to have his wishes considered.  Kurt maintains that E.C. has the maturity required by the exception; Anke contends that he does not.  The Court has ample evidence upon which to base a decision from their testimony, plus the opinion of the GAL, a DCYF worker,[6] and one of E.C.'s teachers.[7]  Children mature at different ages and a child's maturity is influenced by his experience in the world.  Maturity is a relative concept:  a child may be mature enough to decide which after-school activities he should participate in yet lack the maturity to make a reasoned decision on which continent he should make his home.

---

[6] The DCYF worker met with E.C. for nearly an hour to evaluate his reasons for wanting to remain in Rhode Island and to ensure he was not neglected or abused. She testified he was intelligent and articulate and understood the purpose of meeting with her.  She characterized his responses to her questions as "well thought out."  Importantly, she also testified that she believed he was not being pressured by his father to remain in Rhode Island.

[7] E.C.'s seventh grade teacher's testimony was not very illuminating.  She testified he did well in school, interacted socially with other students, and was pleasant.  She had very little one-on-one interaction with him, but she developed no concerns when discussing Germany with him.

The Court knows that it must evaluate E.C.'s maturity given his unique cognitive ability, emotional intelligence, and experience.

The testimony of the GAL has been particularly helpful. She met with E.C. at length and spoke with each of his parents. The Court is struck by E.C.'s acknowledgment to her that he has changed his mind several times, but that he has now reached a decision. That shows he understands decision-making and its complications, as well as his thoughtfulness about this particular matter. *See Colon v. Montufar,* 470 F. Supp. 3d 1280, 1296 (S.D. Fla. 2020) (12-year-old's ability to understand and express mixed feelings was an indication of his maturity). E.C. expressed the concern, which he said his mother shared, that he would not be given credit in Germany for schoolwork he completed in Rhode Island. He also talked about the stress he feels in Germany, much of which is caused by the demands of his school. The night before the GAL's testimony, he commented to her on the phone, "I just know I wouldn't make it another year in Germany.[8]"

The Court finds that E.C. at 13 is of a sufficient age to have his wishes considered. *See Falk v. Sinclair,* 692 F. Supp. 2d 147, 165 (D.Me. 2010) (close question whether a "very bright" eight-year-old was sufficiently mature to invoke exception); *Rodriguez,* 817 F.3d at 478 (11-year-old); *Garcia v. Pinelo,* 808 F.3d

---

[8] This was not the first expression by E.C. of overwhelming stress from the conflict about where he should reside. Just before leaving for the airport to return to Germany on August 11, 2022, he wrote on a bathroom mirror, "Please help, this is tearing me in half." He told the GAL during his private meeting with her that he wished the Nazis would take over Germany because they would expel him, thus providing a solution. He told the Court he worried that if he went back to visit Germany his mother would not let him return to the United States.

7

1158, 1167 (7th Cir. 2015) (11-year-old) *Dubikovskyy v. Goun,* 54 F.4th 1042 (8th Cir. 2022) (12-year-old). It is significant that, despite her protestation to the contrary now, in March 2022 Anke herself believed that E.C.'s then-desire to stay in Germany stemmed from a mature decision.

The Court had a substantial opportunity to talk with E.C. in a comfortable and reassuring setting and finds him sufficiently mature. E.C. demonstrated in the *in-camera* interview that he is an inciteful, articulate child who understands the nature of the proceedings and the significance of his role in them. He has both high comprehension and the ability to articulate his views and his reasons for them. He understands the consequences of the Court's decision. He also has the maturity to appreciate the impact of the Court's action on his parents. Further, I find that neither parent has exercised an undue influence over him.

## 2. Preference v. Objection

The Convention provides that the *objection* of a child of sufficient age and maturity may trump the presumption of return. The language of the Convention provides for the child to "object." "A child's objection is different from a child's wishes, as would be considered in a custody hearing." *Colon v. Montufar,* 470 F. Supp. 3d at 1296. The text of the Convention restricts the age and maturity exception to cases in which the child "objects" to being returned. A mere preference is not an objection, *Rodriguez,* 817 F.3d at 476-77, and is not sufficient. *Tann v. Bennett,* 648 F. Appx. 146, 149 (2d Cir. 2016); *Romero v. Bahamonde,* 857 Fed. Appx. 576, 583 (11th Cir. 2001). Even a "sincere preference" is not "an adequate

8

basis … 'to disregard the narrowness of the age and maturity exception to the Convention's rule of mandatory return.'" *Velozny on behalf of R.V. v. Velozny,* 550 F. Supp. 3d 4, 23 (S.D.N.Y. 2021) (citation omitted).

Neither word is talismanic. *Id.* The difference is not merely semantic and to a 13-year-old one may simply be the flip side of the other's coin: a preference for spaghetti for dinner may be the same to the child as an objection to chicken. But it is the job of the Court to discern whether E.C.'s desire to remain in the United States expresses a mere preference to remain in Burrillville or manifests an objection to living in Germany. *Dubikovskyy v. Goun*, 54 F.4th at 1049 ("We recognize the challenges that come with deciphering the difference between an objection and a preference in a child's testimony."). "There is a substantive difference between preferring to live in one of two countries—when living in either country would be acceptable—and affirmatively objecting to returning to one country—when living in that country would be unacceptable. Only an objection is sufficient to trump the Convention's strong presumption in favor of return." *Id.*

The difference has been expressed as the difference between a generalized desire and a particularized objection. *Custodio v. Samillan,* 842 F.3d 1084, 1091 (8th Cir. 2016) ("particularized objection"); *Vasconcelos v. Batista*, 512 Fed. Appx. 403, 408 (5th Cir. 2013) (unpub) (reasons constituting objection were specific); *Dubikovskyy,* 54 F.4th at 1048 ("particularized objection").

The Court finds that E.C.'s reasons for protesting returning to Germany are both strong and specific and that they constitute an objection within the meaning of

9

the Convention. He has articulated that objection consistently to his mother, his father, the GAL, the DCYF worker, and the Court. In the past he has appeared to waver, by telling his mother he wanted to stay in Germany and his father that he wanted to remain in Burrillville, but the Court suspects that apparent changing of his mind was understandably due to not wanting to hurt the feelings of the parent in front of him. Today, and while this proceeding has been ongoing, E.C.'s desire to remain in the United States is assertive, unequivocal, and consistent. Indeed, it was so strong that he broke down at Logan Airport at the prospect of returning to Germany and would not board the plane.

His objections are specific and amount to more than a generalized notion that life is "better" in the United States. His primary objection concerns his schooling in Germany. The school day is long and does not allow him the opportunities for other activities that he enjoys in Burrillville. These other activities contribute not only to his happiness but to his growth and they are important to him, particularly the chance to play basketball. It appears that because of the curriculum rigidity of his German school, his months in the Burrillville school system will not be credited and were he to return mid-year he would have to repeat an entire grade and not be able to matriculate with his class. That is a serious matter to a 13-year-old and constitutes a specific reason why he feels return to Germany would not be in his best interests.

It appears to the Court that he objects to the living arrangements in Germany and at no time did Anke indicate those arrangements would change upon

his return. In Germany, even though there are two bedrooms, he sleeps in the same bedroom as his mother, in a twin bed pushed up against hers. In Burrillville, he has his own room and, after some effort, has become accustomed to sleeping in it. Finally, he has expressed that a return to Germany would show his views are not listened to and not respected.

The Court is not empowered to "second-guess" the reasonableness of E.C.'s objections. It is enough that the Court finds them considered, the product of much thought and discussion, and strongly held. *Rodriguez,* 817 F.3d at 476 (a mature child's autonomy, whatever the reason for his objection, "trumps the Convention's interest in preventing wrongful removals.").

### III. CONCLUSION

Expressing his views has not been easy for E.C. He is acutely conscious that his opinion will influence the decision of the Court and is likely to lead to the distress of one of his parents. He loves them both a great deal and does not take disappointing either of them lightly. His objection to returning to Germany has consumed the attention of his family for the better part of five months now and no doubt it has been a stressful time for all of them. The Court appreciates that both parents want what is best for their son. The Hague Convention, however, does not empower the Court to order E.C. to remain in the United States while future custody is determined because it is in his best interest. Rather, it empowers the Court to give legal voice to what E.C. himself determines is in his best interest, at least for now. He has made

that determination, the Court finds he has the age and maturity to make that decision, and his objection to return should be honored.

The Petition for Return is DENIED. In accordance with the mandatory provision of 22 U.S.C. § 9007(b)(2), legal fees and costs incurred in connection with this action are assessed against the petitioner.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

January 19, 2023